UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSE LUIS RUBERT,

                                    Plaintiff,

                    v.

DANIEL KING, *et al.*,

                                    Defendants.

No. 19-CV-2781 (KMK)

OPINION & ORDER

Appearances:

Jose L. Rubert
Goshen, NY
*Pro se Plaintiff*

Christine L. Hogan, Esq.
Emily C. Haigh, Esq.
Littler Mendelson, P.C.
New York, NY
*Counsel for Defendant Walmart, Inc.*

KENNETH M. KARAS, United States District Judge:

        Pro se Plaintiff Jose Luis Rubert ("Plaintiff") brings this Action, pursuant to 42 U.S.C.

§ 1981, Title VII, and New York State Human Rights Law ("NYSHRL"), against Walmart, Inc.

("Walmart"), Walmart security guard Daniel King ("King"), Walmart store manager "Carry,"

and Walmart assistant manager "Sam," (collectively, "Defendants"), alleging that Defendants

discriminated and retaliated against him because of his race and national origin.  (*See* Amended

Complaint ("Am. Compl.") (Dkt. No. 6).)  Before the Court is Walmart's Motion To Dismiss

pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* Not. of Mot. (Dkt. No. 27).)  For the

following reasons, the Motion is granted in part and denied in part.

I.  Background

A.  Factual Background

The following facts, drawn from Plaintiff's Amended Complaint, are taken as true for the

purpose of resolving the instant Motion.[1]

During the relevant period, Plaintiff, who is Puerto Rican and of Hispanic heritage, was

an employee of Walmart at a store location in Monticello, NY.  (Am. Compl. 3.)[2]  King, who is

white, worked at the same Walmart store as a "security guard supervisor."  (*Id.* at 8, 11.)  From

March 2016 through February 2017, King sent numerous text messages to Plaintiff's wife,

falsely claiming that Plaintiff was having an affair with two Walmart employees.  (*Id.* at 5.)

King's conduct eventually "destroyed [Plaintiff's] marriage and forced [Plaintiff] to move out of

[his] home."  (*Id.* at 8.)  Plaintiff first discovered that King was sending these text messages in

June 2017.  (*Id.*)  Plaintiff then "tried to have a discussion" with King about King's conduct; but,

in response, King "initiated a campaign against [Plaintiff] at work."  (*Id.*)  In particular, King

---

[1] Where appropriate, the Court also considers factual allegations contained in Plaintiff's opposition papers to the extent that those allegations are consistent with the Amended Complaint.  *See Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) ("[W]here a pro se plaintiff is faced with a motion to dismiss, a court may consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint." (citation, italics, and quotation marks omitted)); *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997) ("[T]he mandate to read the papers of pro se litigants generously makes it appropriate to consider [a] plaintiff's additional materials, such as his opposition memorandum." (citations omitted)).  The Court also considers official documents, including Plaintiff's arrest and conviction records.  *See United States v. Marsalis*, 314 F. Supp. 3d 462, 464 n.2 (E.D.N.Y. 2018) ("The [c]ourt takes judicial notice of [the d]efendant's prior convictions."); *2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assurance Co.*, 96 F. Supp. 3d 182, 206 (S.D.N.Y. 2015) (explaining that a court may take "judicial notice of documents in the public record at the [m]otion [t]o [d]ismiss stage . . . to establish their existence and legal effect, or to determine what statements they contained").

[2] Because Plaintiff's Amended Complaint is not paginated consistently, the Court cites to the page number contained in the ECF stamp.  Quotations from the Amended Complaint also reflect minor corrections to spelling, grammar, and punctuation.

told Plaintiff's coworkers that Plaintiff was a "drug addict," and called him names, including, "junkie," "spic," "lowlife," and "other expletives." (*Id*.) King also used "his position as a security guard" to "harass[]" and "stalk[]" Plaintiff, "watching [Plaintiff] through the cameras, sending [him] text messages and basically tormenting [him]." (*Id*. at 9.)

In July 2017, Plaintiff brought a copy of a text message exchange in which King called Plaintiff a "spic" to his store manager, Sam, and told Sam that he found King's message racist and humiliating. (*Id*. at 10.) In reply, Sam "laughed and told [Plaintiff] not to take Daniel King seriously," but said he would speak with King. (*Id*.) However, King's behavior simply "intensified." (*Id*.) Plaintiff therefore spoke to Carry, a Walmart assistant manager as well. (*Id*.) Carry responded that she "didn't know that the word 'spic' was racist against Hispanics" (although she acknowledged knowing that the word "wetback" was a racial epithet). (*Id*.) Thereafter, King's behavior "got worse" as was subsequently witnessed by several additional coworkers. (*Id*.)

On August 2, 2017, Plaintiff engaged in a "confrontation [with King] in a Walmart parking lot after [] King made reference [to Plaintiff's] daughters, ages 7 and 11 at the time, going to [King's] house." (*Id*. at 11; *see also* Decl. of Emily Haigh, Esq. in Supp. of Mot. ("Haigh Decl.") Ex. B ("Arrest Report") (Dkt. 29-2).) Police arrived at the scene, and arrested Plaintiff on several charges, including assault, and reported that Plaintiff had cut King's arm. (*See generally* Arrest Report.) The altercation and arrest led to Plaintiff's termination by Walmart and his conviction in Sullivan County Court. (*See* Am. Compl. 11; *see also* Haigh Decl. Ex. A ("Certificate of Conviction") (Dkt. 29-1).)

Plaintiff now seeks $7,000,000 in damages relating to the loss of his job, wages, and marriage, as well as violations of company policy, and the discrimination, retaliation, and

harassment he alleges he endured.  (Am. Compl. 6.)  Plaintiff acknowledges that he did not file a discrimination charge with the EEOC or any other government agency, but explains that this was because he "did not know about such organization (EEOC)," and because he tried to resolve the issue with Walmart management.  (*Id*.)

    B.  Procedural Background

On March 26, 2019, Plaintiff filed his initial Complaint and an Application to proceed in forma pauperis ("IFP").  (*See* Dkt. Nos. 1–2.)  On April 9, 2019, IFP status was granted.  (*See* Dkt. No. 4.)  On April 30, 2019, Chief Judge McMahon ordered Plaintiff to amend his Complaint, noting that Plaintiff's initial Complaint did not adequately allege that Walmart was aware of a racial dimension to Plaintiff's dispute with King.  (*See* Dkt. No. 5.)  On June 19, 2019, Plaintiff filed his Amended Complaint.  (*See* Am. Compl.)  On July 25, 2019, the Court issued an Order of Service as to Walmart and King, and directed Walmart to ascertain the identities of "Sam, the Store Manager" and "Carry, the Assistant Manager" and provide the information to Plaintiff.  (*See* Order of Service (Dkt. No. 9).)  The Order of Service further specified that, within 30 days of receiving the information from Walmart, Plaintiff should amend his complaint to properly name Sam and Carry.  (*See id*.)  On September 30, 2019, the U.S. Marshals Service served copies of the Summons and Complaint on Walmart, and believing that they had thereby served King as well, reported that service was executed as to both.  (*See* Dkt. Nos. 17–18.)  On October 4, 2019, Counsel for Walmart entered an appearance on behalf of Walmart only.  (*See* Dkt. Nos. 13–14.)

On November 1, 2019, Walmart provided the requested information and filed a letter-motion requesting permission to file a motion to dismiss.  (*See* Dkt. Nos. 19–20.)  On November 18, 2019, Plaintiff filed a letter opposing Walmart's request.  (*See* Dkt. No. 23.)  On November

20, 2019, the Court reminded Plaintiff that, pursuant to the Court's Order of Service, he must file an amended complaint identifying "Sam" and "Carry" by December 1, 2019.  (*See* Dkt. No. 24.) The Court also set a briefing schedule for Walmart's proposed motion.  (*See id.*)  Plaintiff did not, however, file a second amended complaint.  (*See* Dkt.)

On January 17, 2020, Walmart filed the instant Motion and accompanying papers.  (*See* Not. of Mot.; Mem. of Law in Supp. of Mot. ("Def.'s Mem.") (Dkt. No. 28); Haigh Decl.)  On February 26, 2020, Plaintiff filed his Opposition.  (*See* Pl.'s Mem. of Law in Opp'n to Mot. ("Pl.'s Mem.") (Dkt. No. 33); Pl.'s Decl. in Opp'n to Mot. ("Pl.'s Decl.") (Dkt. No. 34).)  On March 17, 2020, Walmart filed its Reply.  (*See* Def.'s Reply Mem. of Law in Further Supp. of Mot. ("Def.'s Reply") (Dkt. No. 37).)  On May 29, 2020, Plaintiff filed a Sur-Reply.  (*See* "Pl.'s Reply Mem." (Dkt. No. 39).)  On June 9, 2020, Walmart filed a letter noting that Plaintiff's Sur-Reply was impermissible.  (*See* Dkt. No. 40.)[3]  On July 14, 2020, at the request of the Court, Walmart filed a letter explaining why the purported service on King was insufficient, and clarifying that Counsel for Walmart represented only Walmart and not King.  (*See* Dkt. No. 41.)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure

---

[3] The Court notes that Plaintiff is proceeding pro se against one of the world's largest corporations.  The Court will consider Plaintiff's Sur-Reply.

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendant's Motion, the Court is required to "accept as true all of the factual allegations contained in the [Amended Complaint]." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his

complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted). However, when the complaint is drafted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah*, 2013 WL 3972514, at *4 n.3 (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents either in [the] plaintiff[']s possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted).

### B.  Analysis

Walmart argues that Plaintiff's Title VII claims are time-barred; that Plaintiff has failed to state a plausible claim of discrimination or retaliation under § 1981 or the NYSHRL; that Plaintiff does not allege conduct that is sufficiently severe or pervasive to support hostile work environment claims; and that as Plaintiff's pleading issues are substantive, dismissal should be with prejudice.  (*See generally* Def.'s Mem.)  The Court addresses these arguments only to the extent necessary to decide the instant Motion.

### 1.  Title VII Claims

It is well established that a Title VII plaintiff "may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter." *Holmes v. YMCA of Yonkers, Inc.*, No. 19-CV-620, 2020 WL 85389, at *2 (S.D.N.Y. Jan. 7, 2020) (citing *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.,* 274 F.3d 683, 686 (2d Cir. 2001) (per curiam)).  "[I]n states such as New York that have an agency with the authority to address charges of discriminatory employment practices, the statute of limitations for filing a charge of discrimination with the Equal Employment Opportunity Commission is 300 days." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126 (2d Cir. 2010) (alteration, citation and quotation marks omitted).  The administrative exhaustion requirement applies to pro se and counseled plaintiffs alike.  *See Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 599–600 (2d Cir. 1999) (per curiam) (explaining that pro se plaintiffs' "complete failure to file a complaint with the EEOC, and their insistence that they are not required to file such, bar consideration of their Title VII claim").  However, "the exhaustion requirement, while weighty, is not jurisdictional." *Boos v. Runyon,* 201 F.3d 178, 182 (2d Cir. 2000).  It is a "requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455

U.S. 385, 393 (1982); *see also Fernandez v. Chertoff*, 471 F.3d 45, 58 (2d Cir. 2006) ("Because [the] failure to exhaust [one's] administrative remedies is not a jurisdictional defect, it is subject to equitable defenses."). Failure to file a charge with the EEOC thus constitutes an "affirmative defense to claims under [Title VII]." *Rodriguez v. N.Y.C. Dep't of Transp.*, No. 11-CV-3056, 2012 WL 4447101, at *2 (E.D.N.Y. Sept. 25, 2012). Nevertheless, "if non[-]exhaustion is clear from the face of the complaint (and incorporated documents), a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted." *Gomez v. N.Y.C. Police Dep't*, 191 F. Supp. 3d 293, 299 (S.D.N.Y. 2016) (citations and quotation marks omitted); *see also Arnold v. Research Found. for State Univ. of N.Y.*, 216 F. Supp. 3d 275, 286–87 (E.D.N.Y. 2016) ("Although a plaintiff is not required to explicitly plead or demonstrate exhaustion at the pleading stage, a court should nonetheless grant a motion to dismiss pursuant to 12(b)(6) for failure to exhaust if it is clear from the face of the complaint that a plaintiff has not exhausted their remedies." (citation and quotation marks omitted)).

Here, Plaintiff's Title VII claims—that Walmart discriminated against him based on his race and national origin—rely solely on conduct that occurred in 2016 and 2017. (*See* Am. Compl. 5–8.) Indeed, the last possible date that any such conduct could have occurred was the day on which Plaintiff was terminated, sometime in 2017. (*See id*. at 10–11; *see also* Pl.'s Reply Mem. ¶ 3.) However, Plaintiff acknowledges that he never filed a discrimination charge with any government agency, either within 300 days of his termination or at any point thereafter. (*See* Am. Compl. 3.) The 300-day statutory deadline had thus clearly run by the time Plaintiff filed his initial Complaint on April 1, 2019. (*See* Dkt. Nos. 1–2.) Plaintiff has, therefore, failed to exhaust his administrative remedies.

To the extent Plaintiff argues that his ignorance of the EEOC entitles him to equitable tolling of this deadline, his argument is unavailing.  "Equitable tolling of the 300-day statutory deadline is only appropriate in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (citation and quotation marks omitted).  Thus, when determining whether equitable tolling is applicable, a district court must consider whether the plaintiff (1) has "acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Id.* (citation and quotation marks omitted).  Moreover, courts in the Second Circuit have repeatedly explained that mere ignorance of exhaustion requirements is not adequate grounds for applying equitable tolling. *See Francis v. Blaikie Grp.*, 372 F. Supp. 2d 741, 748 (S.D.N.Y. 2005) (explaining that the plaintiff's "ignorance of her ability to file a charge with the EEOC" was not "a sufficient basis for tolling the limitation period"); *see also Rudaj v. Treanor*, 522 F. App'x 76, 77 (2d Cir. 2013) ("[N]either [the plaintiff's] pro se status nor his professed ignorance of the law demonstrate "rare and exceptional circumstance[s] warranting equitable tolling." (citation and quotation marks omitted)); *Woods v. Unum Life Ins. Co. of Am.*, No. 09-CV-809, 2011 WL 166205, at *5 (D. Conn. Jan. 19, 2011) (explaining, in the context of ERISA claims, that "a claimant ignorant of the exhaustion requirement is not relieved of the requirement"); *Jowers v. Lakeside Family & Children's Servs.*, 435 F. Supp. 2d 280, 284 (S.D.N.Y. 2006) (explaining that a plaintiff's ignorance of the discriminatory nature of his termination did not justify equitable tolling); *accord Arrieta v. Battaglia*, 461 F.3d 861, 867 (7th Cir. 2006) ("Mistakes of law or ignorance of proper legal procedures are not extraordinary circumstances warranting invocation of the doctrine of equitable tolling.").  Accordingly, Plaintiff's simple assertion that he "did not

file with the EEOC because [he] did not know about" the EEOC, (Am. Compl. 6), is insufficient

to establish a sufficient basis for equitable tolling.  *See Dezaio v. Port Auth. of NY & NJ*, 205

F.3d 62, 64–65 (2d Cir. 2000) (explaining that exhaustion requirements "trip[] up laypersons and

lawyers alike," but that "ignorance of the law excuses no one; not because courts assume

everyone knows the law, but because this excuse is one all will plead and no one can refute").

Similarly, to the extent Plaintiff argues that he is entitled to equitable tolling because

Walmart misled him into refraining from pursuing administrative remedies, that argument fails

as well.  To be sure, extraordinary circumstances may sometimes be present when "an adversary

'induced or tricked' the plaintiff into filing after a deadline passed, . . . [or] affirmative

misconduct by the defendant 'lulled [the] plaintiff into inaction.'"  *Jiles v. Rochester Genesee

Reg'l Transp. Auth.*, 217 F. Supp. 3d 688, 691 (W.D.N.Y. 2016) (quoting *South v. Saab Cars

USA, Inc.*, 28 F.3d 9, 11–12 (2d Cir. 1994)); *see also Zhou v. Wu*, No. 14-CV-1775, 2017 WL

1233994, at *3 (S.D.N.Y. Mar. 31, 2017) ("Federal courts have typically extended equitable

relief only sparingly in suits against private litigants, allowing tolling where the claimant has

actively pursued his judicial remedies by filing a defective pleading or where he has been

induced or tricked by his adversary's misconduct into allowing the filing deadline to pass."

(quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96–97 (1990))).  However, to invoke a

defendant's misconduct as a basis for equitable tolling or estoppel, "a plaintiff must show that he

brought his action within a reasonable time after the facts giving rise to the estoppel have ceased

to be operational."  *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1494 (2d Cir. 1995) (citing

*Overall v. Estate of Klotz*, 52 F.3d 398, 404 (2d Cir. 1995) (quotation marks omitted)); *see also

Harper v. Ercole*, 648 F.3d 132, 136 (2d Cir. 2011) (explaining that a statute of limitations is

suspended only "for the duration of the extraordinary circumstances supporting tolling," after which the statute of limitations continues to run).

Here, Plaintiff alleges that Walmart informed him that he had to "exhaust [his] remedies through Walmart management first," and that "management [then] failed to act." (Am. Compl. 6.) The Court need not decide whether such an alleged statement by Walmart suffices in theory to justify equitable tolling, because Plaintiff continued his failures long after—indeed, for well more than 300 days after—he ended his employment with Walmart. "Once the circumstances inducing reliance are exposed, the plaintiff's obligation to timely file is reimposed." *Buttry*, 68 F.3d at 1491 (citation omitted). Thus, "even if [Plaintiff] relied on a misrepresentation made to [him] by [Defendant], [Plaintiff] had to bring h[is] action within a reasonable time after [his termination]. This []he did not do." *Id.* Plaintiff's tardiness in pursuing remedies following his termination "amounted to no more than excusable neglect undeserving of equitable tolling." *Semper v. N.Y. Methodist Hosp.*, 786 F. Supp. 2d 566, 579 (E.D.N.Y. 2011) (citation omitted). Plaintiff's Title VII claims must therefore be dismissed.

### 2. Section 1981 Claims

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). Section 1981 thus prohibits racial discrimination "with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Calvelos v. City of New York*, No. 19-CV-6629, 2020 WL 3414886, *9 (S.D.N.Y. June 22, 2020) (citation omitted).[4] Accordingly, as with Title VII and § 1983 claims, a § 1981

---

[4] Unlike Title VII, the statute of limitations for claims brought under § 1981 is four years. *See Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 209 (E.D.N.Y. 2014). Plaintiff's

plaintiff may allege that discrimination occurred in the form of discrete adverse employment

actions, as well as by means of conduct creating a "hostile work environment." *See Patterson v.*

*County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (discussing the similarities and differences

between Title VII, § 1981, and § 1983).  Although § 1981 does not itself "specifically authorize[]

private lawsuits to enforce" its prohibitions, the Supreme Court has "created a judicially implied

private right of action." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct.

1009, 1015 (2020).

Generally, "[p]ersonal liability under section 1981 must be predicated on the actor's

personal involvement." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 68, 75 (2d.

Cir. 2000); *see also Patterson*, 375 F.3d at 206 (same).  Relatedly, a plaintiff may pursue § 1981

claims only where the defendants acted "with discriminatory intent." *See Gen. Bldg.*

*Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 389 (1982) (explaining that "§ 1981

reaches only purposeful discrimination"); *Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 68

(2d Cir. 2015).  And as the Supreme Court has recently clarified, "[t]o prevail, a [§ 1981]

plaintiff must initially plead and ultimately prove that, but for race, [he] would not have suffered

loss of his legally protected rights." *Comcast Corp.*, 140 S. Ct. at 1019.  In other words, a

successful § 1981 plaintiff must plausibly allege that the defendant's discriminatory intent was a

"but-for" cause of an actionable adverse employment action or hostile environment.  *Id.*

In the Second Circuit, § 1981 claims are generally "assessed using the burden-shifting

framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S.

792 (1973)." *Bowen-Hooks*, 13 F. Supp. 3d at 209.  Thus, a plaintiff bringing a discrimination

---

claims of discrimination accrued between 2016 and 2017, for which the statute of limitations had
not yet run when Plaintiff filed his initial Complaint on March 26, 2019.

claim must plausibly allege that: "(1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (citation and quotation marks omitted).  Under the same framework, a plaintiff bringing a retaliation claim must establish that (1) he "participat[ed] in a protected activity"; (2) the defendant "kn[ew] of the protected activity"; (3) he suffered an "adverse employment action"; and (4) the existence of a "causal connection between the protected activity and the adverse employment action." *See Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (citation and quotation marks omitted).

### a.  Discrimination Based on Discrete Adverse Employment Actions

Here, Plaintiff has alleged that his termination is the actionable adverse employment action.  Indeed, termination does qualify as an adverse employment action.  *See Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) ("To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities.  Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." (citation omitted)); *Opoku v. Brega*, No. 15-CV-2213, 2016 WL 5720807, at *7 (S.D.N.Y. Sept. 30, 2016) (explaining that termination is a "quintessential materially adverse employment action," but that "excessive scrutiny, criticism, and negative evaluations . . . are not . . . unless such conduct is accompanied by negative consequences, such as demotion, diminution of wages, or other tangible loss" (quotation marks and citations omitted)).  However,

Plaintiff fails to provide non-conclusory allegations that plausibly suggest that his race, national origin, or a relevant protected activity, was a "but-for" cause of his termination.  Indeed, Plaintiff can point to no racially discriminatory statements or conduct by his Walmart supervisors, or anyone conceivably involved in the decision to fire him.  (*See generally* Am. Compl.)[5]  Rather, Plaintiff simply (and conclusorily) alleges that he was "fired because defendants saw him as another expendable Hispanic," and that "Walmart has a history of discrimination and illegal conduct."  (Pl.'s Reply Mem. ¶ 6.)  These are "boilerplate assertion[s]" unsupported by specific facts.  *Lopes v. Westchester County*, No. 18-CV-8205, 2020 WL 1445729, at *5 (S.D.N.Y Mar. 25, 2020) (citation and quotation marks omitted).

Further, Plaintiff's conclusory assertion regarding the reason for his firing is contradicted by Plaintiff's own pleadings.  Indeed, Plaintiff acknowledges that it was his confrontation with King in the Walmart parking lot—and thus, his subsequent arrest and conviction—that directly led to his termination.  (*See* Am. Compl. 11 (explaining this his "confrontation in [the] Walmart parking lot . . . led me to get fired").)  Such an altercation, and surely Plaintiff's related arrest and conviction, amount to "legitimate, nondiscriminatory" reasons for his discharge.  *See Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 335 (S.D.N.Y. 2020) (explaining that an employee's "disruptive behavior in the workplace" constitutes a legitimate, non-discriminatory reason for adverse actions); *Welland v. Citigroup, Inc.*, No. 00-CV-738, 2003 WL 22973574 at *6 (S.D.N.Y. Dec. 17, 2003) ("Discharging an employee for violating company policy

---

[5] While Plaintiff suggests that King "had authority over" him because King was a "security guard supervisor," (Am. Compl. 6), the allegation is conclusory.  Indeed, Plaintiff does not allege that he himself was a security guard, and rather asserts that he worked in "electronics." (*See* Pl.'s Mem. ¶ 7.)  In any event, whatever kind of "authority" Plaintiff refers to here cannot be reasonably interpreted as suggesting that King (a security guard) would be involved in the decision to fire Plaintiff (a member of the "electronics" staff).

constitutes a legitimate nondiscriminatory reason for terminating employment." (citations

omitted)), *aff'd*, 116 F. App'x 321 (2d Cir. 2004).  Plaintiff's own allegation therefore suggests

that his termination *did not* occur "under circumstances giving rise to an inference of

discriminatory intent."  *Brown*, 673 F.3d at 150.  Rather, Plaintiff's own pleadings (and matters

of which the Court may take judicial notice) suggest that he was fired based on a violent

altercation, arrest, and conviction.  Plaintiff has therefore failed to allege circumstances

suggesting "a causal connection between the alleged adverse employment action and [his] race."

*Edwards v. Thomson Reuters (Tax & Accounting) Inc.*, No. 19-CV-93, 2020 WL 2132348, at *4

(S.D.N.Y. May 5, 2020).

  Moreover, Plaintiff's allegations are particularly self-defeating in light of the Supreme

Court's recent decision establishing "but-for" causation as a necessary element of § 1981 suits.

*See Comcast*, 140 S. Ct. at 1019.  In light of this requirement, Plaintiff's affirmative

acknowledgement of sufficient, non-discriminatory reasons for his termination is determinative.

As the Second Circuit has recently explained, where "but-for" causation is required, a plaintiff

"must establish that the employer's stated non-discriminatory reason is either false or inadequate

to support the adverse employment action."  *Naumovski v. Norris*, 934 F.3d 200, 215 (2d Cir.

2019).  Plaintiff's express acknowledgement, apparent from the face of his Amended Complaint,

that the altercation (a sufficient, non-discriminatory reason) led to his termination is thus fatal to

his claims, even at the pleading stage.  *See Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 222

(E.D.N.Y. 2018) (dismissing a plaintiff's retaliation claims because materials integral to her

complaint "undercut but-for causation," and explaining that the plaintiff thus "failed to

successfully plead that 'but for' the [p]laintiff's complaints of gender, race, and national origin

discrimination, the [d]efendants would not have terminated [the plaintiff]"); *see also Vega v.*

*Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (explaining that a plaintiff pursuing Title VII retaliation claims "must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action" (citation omitted)); *Langella v. Mahopac Cent. Sch. Dist.*, No. 18-CV-10023, 2020 WL 2836760, at *11 (S.D.N.Y. May 31, 2020) (dismissing ADA claims for failing to plausibly allege that disability was the "but-for" cause of an adverse employment decision).[6]

To the extent that Plaintiff argues that Walmart's differential treatment of himself and King—a white employee—reflects racially discriminatory treatment, (*see* Pl.'s Mem ¶¶ 4–5), this argument also fails. To show disparate treatment, "the individuals with whom [the plaintiff] attempts to compare herself must be similarly situated in all material respects." *See Bush v. Fordham Univ.*, 452 F. Supp. 2d 394, 410 (S.D.N.Y. 2006) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)); *see also O'Neal v. State Univ. of N.Y.*, No. 01-CV-7802, 2006 WL 3246935, at *11 (E.D.N.Y. Nov. 8, 2006) (holding that the focus should be on "employees that have similar qualifications, display similar disciplinary records[,] or committed similar insubordinate acts"). Here, Plaintiff and King were decidedly *not* similarly situated. First, as Plaintiff acknowledges, he and King held different jobs, with Plaintiff working in electronics and King working as a security guard. (*See* Am. Compl. 8; Pl.'s Mem. ¶ 7.) Second,

---

[6] To be clear, a plaintiff has no "obligation to anticipate and disprove, in [his] prima facie case, the employer's proffer of a legitimate, non-discriminatory basis for its decision." *Tyson v. Town of Ramapo*, No. 17-CV-4990, 2019 WL 1331913, at *12 (S.D.N.Y. Mar. 25, 2019) (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001)). However, where sufficient non-discriminatory reasons are apparent from the face of the complaint, they may undermine the "causation" element of a plaintiff's prima facie case, particularly where "but-for" causation is required. *See Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) ("To adequately plead causation, the plaintiff must plausibly allege that the retaliation [or discriminatory intent] was a 'but-for' cause of the employer's adverse action." (citation and quotation marks omitted)); *Amaya*, 295 F. Supp. 3d at 222 (dismissing a plaintiff's retaliation claims because materials integral to the complaint "undercut but-for causation").

and more importantly, while the August 2, 2017 confrontation led to Plaintiff's arrest and

conviction, (*see* Arrest Record; Certificate of Conviction), Plaintiff has alleged nothing remotely

similar with respect to King.  An employee who has been arrested for and convicted of assault on

or near the workplace premises is not similarly situated to an employee who was not arrested or

convicted for assault.  *See Williams v. Metro-North R.R.*, No. 17-CV-3092, 2020 WL 1489832,

at *9 (S.D.N.Y. Mar. 27, 2020) (explaining that a "substantial difference between [the p]laintiff's

and [a coworker's]  disciplinary histories . . . undermines any attempt to use [the coworker] as a

similarly situated comparator" (quotation marks omitted)); *Whittle v. County of Sullivan*, No. 16-

CV-725, 2017 WL 5197154, at *7 (S.D.N.Y. Nov. 8, 2017) (rejecting comparator analysis where

the plaintiff failed to plead, inter alia, how supposed comparators' "disciplinary histories

compared to his"); *see also Jenkins v. N.Y.C. Transit Auth.*, 201 F. App'x 44, 46 (2d Cir. 2006)

(dismissing a § 1981 claim because "no similarly situated white employee received more

favorable treatment"); *Colon v. Fashion Inst. of Tech.*, 983 F. Supp. 2d 277, 289 (S.D.N.Y. 2013)

(explaining that a plaintiff's "co-workers with whom she compares herself were not similarly

situated, and therefore were not adequate comparators to show disparate treatment").

Accordingly, Walmart's differential treatment of Plaintiff and King cannot sustain a claim for

racial discrimination.[7]

---

[7] Insofar as Plaintiff pursues claims for retaliation, such claims are rejected for the same reasons already identified.  Plaintiff fails to allege that Walmart had or expressed any retaliatory animus toward Plaintiff.  Further, Plaintiff acknowledges that Walmart's stated reason for his termination—his confrontation with King that led to Plaintiff's arrest and conviction—is true, and, as a matter of law, that reason is clearly adequate for Plaintiff's termination.  Thus, Plaintiff cannot adequately plead that any protected activity is a cause, much less a "but-for" cause, of his termination.  *See Colon*, 983 F. Supp. 2d at 290 (dismissing a § 1981 retaliation claim where the plaintiff failed to show that an adverse employment action was taken in response to protected activity).

Accordingly, because Plaintiff has failed to allege that Walmart terminated Plaintiff based on discriminatory intent, any § 1981 claim based on his termination must be dismissed.[8]

### b.  Discrimination Based on Hostile Work Environment

To state a claim of hostile work environment under § 1981, a plaintiff must plausibly allege that his "workplace was permeated with discriminatory intimidation, ridicule, and insult, that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *Watkins v. N.Y.C Transit Auth.*, No. 16-CV-4161, 2020 WL 1888839, at *8 (S.D.N.Y. Apr. 16, 2020) (quotation marks and citation omitted); *see also Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 723–24 (2d Cir. 2010) (same).  A plaintiff may satisfy this standard by "demonstrat[ing] either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2001) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000)).  Conduct that is "episodic" and not sufficiently "continuous and concerted" will not be deemed pervasive. *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015) (citation omitted).  Moreover, a plaintiff must establish that the defendants "create[d] such an environment because of the plaintiff's race." *Amaya*, 295 F. Supp. 3d at 224 (citation, quotation marks, and alterations omitted); *see also Colon*, 983 F. Supp. 2d at 292 (noting that a hostile work environment must have been created because of the plaintiff's "membership in a protected class").  In determining

---

[8] Because the *McDonnell Douglas* framework discussed above applies to both the NYSHRL and § 1981, the Court dismisses Plaintiff's NYSHRL claims for substantially the same reasons discussed above.  *See Soto v. Marist Coll.*, No. 17-CV-7976, 2019 WL 2371713, at *3, *12 (S.D.N.Y. June 5, 2019) (noting that race-based NYSHRL and § 1981 claims all require that a plaintiff suffer an "adverse employment action" on account of his race).

whether a plaintiff has plausibly alleged an actionable hostile environment, courts must look at

the "totality of the circumstances," including "the frequency of the discriminatory conduct; its

severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

whether it unreasonably interferes with an employee's work performance." *Littlejohn*, 795 F.3d

at 321 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Here, Plaintiff's hostile work environment claims survive the instant Motion for several

reasons.  First, the Court notes that whether "conduct is not severe or pervasive enough to

successfully state a claim for hostile work environment under § 1981 . . . is a factual question

that is generally inappropriate for the Court to determine on a motion to dismiss." *Amaya*, 295 F.

Supp. 3d at 224; *see also Patane v. Clark*, 508 F.3d 106, 114 (2d Cir. 2007) (explaining that

"whether a particular work environment is objectively hostile is necessarily a fact-intensive

inquiry").  Second, while Plaintiff's Amended Complaint alleges only a single specific incident

where King called him a "spic," (Am. Compl. 8), Plaintiff expands on this allegation in his

subsequent filings, explaining that King used the word "spic" over a prolonged period of time,

(Pl.'s Mem. ¶ 6), and called him a "'spic' not once but several times," (Pl.'s Sur-Reply ¶ 6).  To

be sure, "[f]or racist comments, slurs, and jokes to constitute a hostile work environment," there

must be "a steady barrage of opprobrious racial comments" rather than "a few isolated incidents

of racial enmity."  *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citation and

quotation marks omitted); *see also McDowell v. North Shore-Long Island Jewish Health Sys.,*

*Inc.*, 788 F. Supp. 2d 78, 82 (E.D.N.Y. 2011) (explaining that "stray remarks" from coworkers

do not amount to a hostile work environment under § 1981 (quotation omitted)).  However, in

light of Plaintiff's allegation that King's use of slurs was prolonged, the Court cannot determine

as a matter of law that such slurs did not amount to "a steady barrage." *Schwapp*, 118 F.3d at

20

110.  After all, whether racial slurs constitute a hostile work environment typically depends upon the "quantity, frequency, and severity of those slurs."  *Id.* at 110–11 (quotation marks omitted).

Third, Plaintiff has alleged offensive conduct beyond King's use of racial slurs that may have contributed to the hostile environment.  For example, Plaintiff alleges that King spread false allegations about him at work, and used "his position as a security guard" to "harass[] and "stalk[]" Plaintiff, "watching [Plaintiff] through the cameras, sending [him] text messages and basically tormenting [him]."  (Am. Compl. 9.)  Standing alone, these allegations do not suggest racially motivated harassment.  However, when combined with allegations that King repeatedly used ethnic slurs in referring to Plaintiff, Plaintiff is entitled to the inference that King's other offensive conduct was motivated, at least in part, by racial animus.  *See Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 388 (2d Cir. 2020) ("Our case law is clear that when the same individuals engage in some harassment that is explicitly discriminatory and some that is not, the entire course of conduct is relevant to a hostile work environment claim."); *Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 118 (2d. Cir 2010) ("A plaintiff may rely on incidents of sex-based abuse to show that other ostensibly sex-neutral conduct was, in fact, sex-based." (citation omitted)); *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 547–48 (2d Cir. 2010) ("Circumstantial evidence that facially sex-neutral incidents were part of a pattern of discrimination on the basis of gender may consist of evidence that the same individual engaged in multiple acts of harassment, some overtly sexual and some not." (citation and quotation marks omitted)).[9]  Of

---

[9] This is not to say that any vaguely discriminatory remark will automatically suffice to suggest that other adverse conduct by the speaker is motivated by animus.  *See Harrison v. State Univ. of N.Y. Downstate Med. Ctr.*, No. 16-CV-1101, 2018 WL 4055278, at *14 (E.D.N.Y. July 6, 2018) ("[The defendant's] expressions of disdain for women at various points during the more than ten years that plaintiff worked [for her employer] are insufficient to plead that the specific events in January and early February 2015 were caused by such disdain.  At no point does plaintiff allege that [the defendant] made such a remark during the relevant period."), *report and*

course, Walmart urges the Court to draw the opposite inference: that Plaintiff's allegations must

be "taken within the context of King and Plaintiff's feud over Plaintiff's wife," and thus that

King's conduct should be understood as the product of a personal feud rather than King's racial

animus.  (Def.'s Reply 6.)  However, at this stage, the Court must draw all inferences in

*Plaintiff's* favor, not Walmart's.  Moreover, parsing the possible causes of King's conduct is a

fact-dependent inquiry ill-suited to decision at this stage of the proceedings.  *See Patane*, 508

F.3d at 114 (vacating and remanding because a district court made fact-dependent judgments

regarding a hostile work environment claims on a motion to dismiss).

Fourth, Walmart has advanced no arguments regarding the extent (or lack thereof) of its

own involvement in and liability for King's conduct.  The Court notes that the precise contours

of supervisory liability in the § 1981 context are unsettled.  On the one hand, it is clear that

§ 1981 claims require personal involvement and discriminatory intent.  *See Gen. Bldg.*

*Contractors*, 458 U.S. at 389 (explaining that § 1981 claims require "purposeful

discrimination"); *Burgis*, 798 F.3d at 68 (explaining that § 1981 claims require "discriminatory

intent"); *Whidbee,* 223 F.3d at 68 (explaining that § 1981 claims "must be predicated on the

actor's personal involvement"); *Lauture v. Int'l Bus. Machines Corp.*, 216 F.3d 258, 261 (2d Cir.

---

*recommendation adopted*, 2018 WL 4054868 (E.D.N.Y. Aug. 24, 2018).  Rather, such
inferences necessarily depend on the "totality of the circumstances."  *Kaytor*, 609 F.3d at 547.
    While the plaintiff in *Rasmy* raised § 1981 claims as well as Title VII claims, the Second
Circuit's analysis focused exclusively on Title VII standards.  *Rasmy* does not, therefore,
specifically address whether § 1981 requires a greater degree of connection between evidence of
a defendant's racial animus and his offensive conduct.  Thus, while *Rasmy* makes clear that, for
the purposes of Title VII, a defendant's use of ethnic slurs at one moment will often be sufficient
to suggest that the defendant's separate conduct is racially motivated, it is not clear that the same
holds true for § 1981 claims.  Indeed, in light of Title VII's "lessened causation standard,"
*Naumovski*, 934 F.3d at 21, there is reason to think otherwise.  However, as Walmart has not
raised this argument, the Court need not consider it at this stage.

2000) ("To establish a § 1981 claim, a plaintiff . . . must show . . . an intent to discriminate on the basis of race by the defendant . . . ."). Additionally, in the context of § 1983 claims, the Supreme Court has explained that these same requirements necessarily demand that a supervisor *himself* act with discriminatory purpose, rather than with mere acceptance of an employee's discriminatory purpose. *See Iqbal*, 556 U.S. at 677 (rejecting the view that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to" a violation of the Equal Protection Clause, and explaining that "[i]n the context of determining whether there is a violation of a clearly established right to overcome qualified immunity, purpose rather than knowledge is required"); *see also Sash v. United States*, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009) (explaining that *Iqbal*'s rejection of liability based on "a supervisor's mere knowledge of his subordinate's discriminatory purpose" applies to "intent-based constitutional claims . . . , specifically racial discrimination"). Given the similarities between race discrimination claims under § 1981 and § 1983, *see Patterson*, 375 F.3d at 226 (discussing the nearly identical legal standards governing § 1981 and § 1983), *Iqbal*'s requirements may well apply to § 1981 claims as well, *see Juarez v. Nw. Mut. Life Ins. Co.*, 69 F. Supp. 3d 364, 368 (S.D.N.Y. 2014) (applying *Iqbal*'s "purposeful discrimination" standard to § 1981 claims); *see also Burgis*, 798 F.3d at 69 (discussing how statistics may be used to provide a plausible inference of "discriminatory intent in a § 1981 or Equal Protection case" in light of *Iqbal*).

On the other hand, *Iqbal* was decided specifically in the context of constitutional claims, and of government officials protected by qualified immunity. *See Iqbal*, 556 U.S. at 677 ("In the context of determining whether there is a violation of a clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose *Bivens* liability on the subordinate for unconstitutional discrimination . . . ."). Here, Plaintiff's claims against Walmart

are statutory, and Walmart is a private entity which has no claim to qualified immunity.

Moreover, prior to *Iqbal*, the Second Circuit had decided that "personal involvement" in a civil

rights tort included both "fail[ure] to remedy the wrong" after learning of it, and "gross

negligen[ce] in supervising subordinates who committed the wrongful acts."  *Colon v. Coughlin*,

58 F.3d 865, 873 (2d Cir. 1995) (citation omitted).  Although *Iqbal* altered that standard for

constitutional discrimination claims, courts in the Second Circuit have continued to apply

*Colon*'s personal involvement standard in other contexts, explaining that "*Colon* still controls

with respect to claims that do not require a showing of discriminatory intent."  *Lebron v.

Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at \*4 (S.D.N.Y. Jan. 24, 2017).  Moreover,

some courts have asserted, even after *Iqbal*, that "respondeat superior claims may reach private

entities under § 1981."  *Tchatat v. City of New York*, No. 14-CV-2385, 2015 WL 5091197, at

\*13 (S.D.N.Y. Aug. 28, 2015), *on reconsideration in part*, 2015 WL 6159320 (S.D.N.Y. Oct. 20,

2015).  There is, therefore, a lack of clarity regarding the standards by which an employer may

be held liable for the discriminatory conduct of its employees.  *Compare Wiercinski v. Mangia

57, Inc.*, 787 F.3d 106, 113 (2d Cir. 2015) (asserting, without analysis, that an employer's

liability under § 1981 "depends on the plaintiff showing that the employer knew (or reasonably

should have known) about the harassment but failed to take appropriate remedial action"), *with

Littlejohn*, 795 F.3d at 314 (asserting, without analysis, that "[a]n individual may be held liable

under §§ 1981 and 1983 only if that individual is personally involved in the alleged deprivation"

(quotation marks omitted)).

Here, Plaintiff has alleged that he complained about King's conduct to two of his

Walmart supervisors, and that they failed to take any action in response.  (Am. Compl. 10.)

However, Plaintiff has not alleged that these supervisors were Walmart policymakers, nor that

they acted pursuant to Walmart policy.  *See Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (explaining, in the context of § 1983, that for private businesses as for municipalities, "action pursuant to official . . . policy" is required to establish personal involvement).  Whether King's conduct is attributable to Walmart thus turns on the precise legal standards by which an employee's discrimination can be imputed to his employer under § 1981, particularly in the aftermath of *Iqbal*.  In the absence of any discussion or argument from Walmart with respect to these issues, the Court declines to consider them sua sponte.  Plaintiff's hostile work environment claims therefore survive the instant Motion.[10]

### 3.   Claims against Sam and Carry

As noted above, Plaintiff's Amended Complaint contains only partial names for (and insufficient information with which the U.S. Marshalls might serve) Sam and Carry. Accordingly, on July 25, 2019, the Court directed Walmart to provide such information to Plaintiff, and directed Plaintiff to file an amended complaint within 30 days of receiving such information.  (*See* Order of Service 2.)  The Court noted as well that it is Plaintiff's responsibility to "request an extension of time for service" if service was delayed.  (*See id.* (citing *Meilleur v. Strong*, 682 F.3d 56, 63 (2d Cir. 2012)).)  While Walmart provided the requested information on November 1, 2019, and the Court reminded Plaintiff of his responsibility to file an amended complaint by December 1, 2019, Plaintiff failed to file such a complaint.  (*See* Dkt. Nos. 19–24.) Accordingly, the Court dismisses the claims against Sam and Carry for failure to properly name these individuals, failure to serve them, and failure to comply with the Court's orders directing

---

[10] Plaintiff's NYSHRL hostile work environment claims survive for substantially the same reasons discussed above.  *See Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015) ("Hostile work environment claims under Title VII and the NYSHRL are governed by the same standard." (citation omitted)).

that he do so.  *See Spencer v. Starner*, No. 18-CV-365, 2020 WL 419312, at *1 (S.D.N.Y. Jan.

27, 2020) (discussing a court's authority to dismiss claims for failure to prosecute claims and

failure to comply with court orders); *Cruz v. City of New York*, 232 F. Supp. 3d 438, 448

(S.D.N.Y. 2017) ("[W]here a plaintiff has had ample time to identify a John Doe defendant but

gives no indication that he has made any effort to discover the [defendant's] name, . . . the

plaintiff simply cannot continue to maintain a suit against the John Doe defendant." (citation and

quotation marks omitted)).

### 4.  Claims Against King

In contrast to Plaintiff's failures with respect to Cary and Sam, Plaintiff's failure to effect

service on King should not be held against him.  As noted above, in serving copies of the

Summons and Complaint on Walmart, the U.S. Marshals Service believed they had thereby

served King as well, and so reported that service was executed as to both Walmart and King.

(Dkt. Nos. 17–18.)  A pro se plaintiff should not be expected to micromanage the service efforts

of the U.S. Marshals Service, especially when ECF docket entries appear to reflect that service

has been successful.  Accordingly, the Court directs Walmart to provide, within 30 days, an

address at which King can be served.  The Court will then issue a renewed Order of Service

directing service on King.

### III.  Conclusion

For the foregoing reasons, the Motion is granted in part and denied in part.

Plaintiff's Title VII claims, § 1981 and NYSHRL claims based on disparate treatment,

and all claims against Carry and Sam are dismissed.  However, Plaintiff's hostile work

environment claims against Walmart and King (pursuant to § 1981 and NYSHRL) survive.  The

Court directs Walmart to provide, within 30 days, an address at which King can be served.

Because Plaintiff has already amended his complaint once in response to an Order To

Amend issued by Chief Judge McMahon, *(see* Dkt. Nos. 5–6), and because the Court provided

Plaintiff with an additional opportunity to amend (which he ignored), *(see* Dkt. Nos. 9, 24), the

dismissals are with prejudice. *See Kamdem-Ouaffo v. Pepsico, Inc.*, 160 F. Supp. 3d 553, 574

n.28 (S.D.N.Y. 2016) ("[T]he [c]ourt has given [p]laintiff two bites at the apple, and there is no

need for a third bite."); *see also Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (explaining

that a plaintiff is not entitled to "a third go-around"); *Treppel v. Biovail Corp.*, No.03–CV–3002,

2005 WL 2086339, at *12 (S.D.N.Y. Aug. 30, 2005) (explaining that "leave to amend would be

futile because [the] plaintiff has already had two bites at the apple and they have proven

fruitless").

The Court will hold a Status Conference in this Action on October 26, 2020 at 10:30 a.m.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No.

27), and to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

DATED:     September 24, 2020
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE